UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UCEFF WADE,

                Plaintiff,

-against-

Detective PETER LUMIA, Shield No. 748            Complaint
and Detective JAMES SANTANA, Shield No.
2699, Individually and as members of the            Jury Trial Demanded
New York City Police Department;
ASSISTANT DISTRICT ATTORNEY
SARA SULLIVAN and ASSISTANT DISTRICT
ATTORNEY BRIDGET STUBBLEFIELD,
Individually and as members of the
New York County District Attorney's Office;
CITY OF NEW YORK; and JOHN and
JANE DOE 1 through 10, individually and
in their official capacities (the names
John and Jane Doe being fictitious,
as the true names are presently unknown),

Defendants.
------------------------------------------------------------x

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York State

claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Uceff Wade ("plaintiff" or "Mr. Wade") is a resident of Kings County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD and the New York County District Attorney's Office, both of which are a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers and district attorneys, including the individually named defendants herein.

9. Defendant Detective Peter Lumia, Shield No. 748 ("Lumia"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Lumia is sued in his individual and official capacities.

10. Defendant Detective James Santana, Shield No. 2699 ("Santana"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Santana is sued in his individual and official capacities.

11. Defendant Assistant District Attorney Sara Sullivan ("Sullivan"), at all times relevant herein, was an officer, employee and agent of the New York County District Attorney's Office. Defendant Sullivan is sued in her individual and official capacities.

12. Defendant Assistant District Attorney Bridget Stubblefield

("Stubblefield"), at all times relevant herein, was an officer, employee and agent of the New York County District Attorney's Office. Defendant Stubblefield is sued in her individual and official capacities.

13. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD and the New York County District Attorney's Office. Plaintiff does not know the real names or shield numbers of defendants John and Jane Doe 1 through 10.

14. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York, the New York County District Attorney's Office and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

15. At all times relevant herein, all individual defendants were acting under the color of state law.

## STATEMENT OF FACTS

16. On October 4, 2019, Uceff Wade was arrested for the sexual assault that allegedly took place on September 7, 2019, at approximately 9PM in an apartment located at 138 West 117th Street, New York New York.

17. Significantly, the complaining witness's[1] account was completely undermined by a litany of documentary and physical evidence.

18. First, the time of the occurrence was in dispute, as the 911 call that related to Mr. Wade's interaction with the complaining witness occurred at 5PM on

---

[1] Because this case relates to a sexual assault, the complaining witness will not be named.

September 7, 2019, the complaining witness later testified at trial that it was 9PM when she called 911. In that 911 call, the complaining witness did not report a rape, but stated that a "man" would not leave her apartment.

19. Upon information and belief, the complaining witness told another witness that she was assaulted at some point after September 7, 2019. Interestingly, the complaining witness did not report that the assault was a sexual assault, but only an "assault".

20. On September 18, 2019, the complaining witness reported to Harlem Hospital because she was suffering from alcoholism and had fallen on her face. The complaining witness had a **significant** history with alcohol abuse.

21. Notably, the complaining witness did not report to the EMS workers that picked her up that she was sexually assaulted.

22. At the hospital, the complaining witness was suffering from HAGMA, a condition that relates to alcoholism, and causes the patient to not think right, have difficulty concentrating, and an altered mental state. Significantly, as testified to by the treating physician at trial, the complaining witness could have been suffering from this disorder off and on including at the time that the assault allegedly occurred.

23. At some point during the hospital visit, the complaining witness stated that she was sexually assaulted. The complaining witness provided varying dates as to when the sexual assault including only 3 days before she entered the hospital on September 18, 2019.

24. The examining doctor found no physical injuries in the genital area of the complaining witness and no signs of sexually transmitted diseases or pregnancy.

25. Social workers connected the complaining witness with Det. Lumia, a detective with the Special Victims Unit of the NYPD.

26. Defendant Sara Sullivan was also introduced to the complaining witness very early in the investigation and, upon information and belief, conducted several interviews with the complaining witness.

27. Det. Lumia was assisted by Det. Santana.

28. Det. Lumia never personally spoke to the complaining witness.

29. Det. Lumia never visited the hospital and, upon information and belief, never reviewed the medical records or interviewed any of the medical personnel that treated the complaining witness.

30. In a text message exchange between Det. Lumia and the complaining witness, the complaining witness actually acknowledged that she did not know whether Mr. Wade was a rapist even though her text message exchange with Det. Lumia occurred weeks after the alleged assault, a *Freudian* slip.

31. Upon information and belief, members of the New York County District Attorney's Office interviewed the witnesses in the case, including defendants Sullivan and Stubblefield.

32. With all the evidence of the unreliability of the complaining witness and her tacit admission during her 911 call and in text messages to Det. Lumia, Mr.

Wade was arrested without probable cause for sexual assault on October 4, 2019.

33. Mr. Wade was indicted for rape and sexual abuse. He was arrested and incarcerated on Rikers Island from October 4, 2019, until February 25, 2021, until he was able to post bail.

34. During that time, Mr. Wade was subjected to brutal assaults because of his charges.

35. On May 25, 2022, Mr. Wade was acquitted of the charges in the indictment, which included rape.

36. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

37. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

38. This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

39. Mr. Wade suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

**FIRST CLAIM**
**Unlawful Detention and Deprivation of Liberty**

40. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

41. Defendants violated the Fourth and Fourteenth Amendments because they arrested and detained Plaintiff without probable cause. Plaintiff also suffered approximately 17 months of unlawful detention.

42. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

43. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

44. Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

45. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### MALICIOUS PROSECUTION AND ABUSE OF PROCESS

46. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

47. Knowing that any colorable cause to continue the prosecution had evaporated, prosecutors Stubblefield and Sullivan, in the capacity of an investigator or "witness" acted in concert and conspired with detectives Lumia and Santana and others, named and unnamed, to use any means, no matter how unlawful or coercive, to take this matter to trial.

48. These illegal and unconstitutional means included, but were not

limited to, presenting unreliable evidence before the grand jury and, ultimately, the trial jury and failing to conduct any meaningful investigation regarding the complaining witness.

49. At every juncture, the Defendants herein misrepresented the reliability of the complaining witness and ignored all of the physical and medical evidence that the complaining witness was not reliable.

50. The foregoing violations of Plaintiff's federal constitutional rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty, and his other injuries and damages.

51. The forgoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

52. Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

53. By reason of the foregoing, the Defendants are liable to plaintiff, under 42 U.S.C. 1983, for compensatory and for punitive damages.

## THIRD CLAIM
### State Law Abuse of Power

54. Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

55. Specifically, they prosecuted Mr. Wade knowing full well that the complaining witness in this case was a completely unreliable alcoholic with severe mental health issues that included, upon information and belief, hallucination.

56. Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain an unlawful arrest and conviction of Plaintiff. Defendants knew, believed, and intended that this evidence would later be used in court against Plaintiff at his criminal trial, and which were so used.

57. Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

58. By virtue of the foregoing, Plaintiff was caused the actual and special damages identified in the subsection labeled Plaintiff's Damages.

## FOURTH CLAIM
### State Law False Imprisonment and False Arrest

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. By their conduct, as described herein, the individual defendants are liable to plaintiff for falsely imprisoning and falsely arresting plaintiff.

61. Plaintiff was conscious of his confinement.

62. Plaintiff did not consent to his confinement.

63. Plaintiff's confinement was not otherwise privileged.

64. Defendant City of New York, as an employer of the individual defendant officers and prosecutors, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

65. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

### FIFTH CLAIM
### Denial Of Constitutional and Statutory Right
### To a Speedy Trial

66. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

67. The individual defendants created false evidence against Plaintiff.

68. The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's office and individual prosecutors knew that this evidence was unreliable because they were front and center during the investigation.

69. In creating false evidence against plaintiff, and in presenting false information to the jury, the individual defendants violated plaintiff's right to fair court proceedings and caused plaintiff to be subjected to 17 months of incarceration and years of unlawful legal proceedings in violation of the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

70. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Negligent Hiring, Training and Retention

71. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

72. Defendant City, through the NYPD and the New York County District Attorney's Office, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

73. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

74. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

75. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

76. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Failure To Intervene

77. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

-11-

78. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

79. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

80. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### (Monell 42 U.S.C. 1983: Claim Against Defendants City of New York, for the Actions of the New York County District Attorney's Office and the NYPD)

81. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

82. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendants, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

83. Prior to Plaintiff's arrest, policymaking officials at the NYPD and the New York County District Attorney's Office, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly

inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

- For years the NYPD ignored understaffing issues with regard to the Special Victims Unit, which was the unit that conducted the investigation in the case at bar; (see https://www.usatoday.com/story/news/2018/03/27/nypd-ignored-understaffing-sex-crimes-units-told-detectives-ignore-cases-probe-shows/462509002/)
- The New York County District Attorney's Office was on full notice of these deficiencies;
- Moreover the New York County District Attorney's Office was also on notice that the Special Victims Unit was suffering from deficiencies that specifically caused the detectives in that unit, such as Det. Lumia and Det. Santana, to coach witnesses and not investigate; (see https://abcnews.go.com/US/nypd-investigators-conduct-review-harvey-weinstein-sexual-assault/story?id=58291744).
- The misconduct by the Special Victims Unit prompted the Department of Justice to investigate the Special Victims Unit on June 30, 2022. The Department of Justice found that received information alleging deficiencies at the

>Special Victims Unit that have persisted for more than a decade, depriving the public of the prompt, thorough and effective investigations needed to protect public safety. These deficiencies allegedly include failing to conduct basic investigative steps. (see https://www.justice.gov/opa/pr/justice-department-announces-investigation-new-york-city-police-department-s-special-victims)

84. With respect to the above paragraphs, prior to Plaintiff's arrest and the initiation of his prosecution in 2019 through 2022, the NYPD or the New York County District Attorney's Office provided no training at all on the best practices to prevent wrongful convictions relating to sex offenses.

85. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendants New York City who knew or should have known):

　　　(a) to a moral certainty that such policies, procedures, regulations, practices, and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

　　　(b) that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

        (c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

86. The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon complaints that defendant New York City received for *years*, as was reported in the Department of Justice Report. *See* https://www.justice.gov/opa/pr/justice-department-announces-investigation-new-york-city-police-department-s-special-victims.

87. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner/Chief (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the investigation of sex crimes and how to conduct basic investigations.

88. The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a city policymaker for whom the City is liable, with respect to compliance by the NYPD employees with the above-mentioned constitutional requirements.

89. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal

suspects or defendants and of other members of the public.

90. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City of New York, NYPD and the New York County District Attorney's Office were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

91. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's rights and his constitutional injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:   August 17, 2023
         Forest Hills, New York

JUSTIN C BONUS ATTORNEY AT LAW

*Justin Bonus*
Justin C. Bonus, Esq.
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375

347-920-0160
Justin.bonus@gmail.com

*Attorneys for Plaintiff*